OPINION *Page 2 
{¶ 1} Defendant-appellant Nathan "Boo" Herring appeals from the Jefferson County Common Pleas Court's decision denying his petition for post conviction relief. The issue in this appeal is whether the trial court correctly determined that the petition for post-conviction relief was untimely and the provision in R.C. 2953.23(A)(1) and (2) were inapplicable. For the reasons expressed below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF FACTS {¶ 2} In State v. Herring, 7th Dist No. 00JE37, 2002-Ohio-2786, this court set forth the fact of this case as follows:
 {¶ 3} "In the early morning hours of May 31, 1999, Terrell Yarbrough (co-defendant in this case) and Herring broke into the home of Aaron Land, Brian Muha and Andrew Doran located at 165 McDowell Avenue, Steubenville, Ohio. Yarbrough and Herring beat and kidnapped Land and Muha. Andrew Doran escaped from the house and called the police.
 {¶ 4} "Yarbrough and Herring forced Land and Muha into Muha's Chevy Blazer. Yarbrough and Herring proceeded to drive the victims through Ohio, West Virginia and into Pennsylvania. In Pennsylvania, Yarbrough and Herring forced the victims up a hillside along U.S. 22. On that hillside, both victims were shot in the head at close range.
 {¶ 5} "Yarbrough and Herring immediately proceeded to drive to Pittsburgh, Pennsylvania, where Herring was caught on a bank video trying to use Muha's ATM card. While in Pittsburgh, Herring and Yarbrough robbed Barbara Vey at gunpoint of her BMW. These events occurred within hours of the murders of Land and Muha.
 {¶ 6} "Yarbrough drove the stolen Blazer back to Steubenville, while Herring drove the stolen BMW back to Steubenville. Yarbrough and Herring were later apprehended. Fingerprints and blood of Herring were found in both the BMW and in the Blazer.
 {¶ 7} "Herring was indicted in a twenty count indictment. The indictment included two counts of aggravated robbery, each with a firearm specification; one count of aggravated burglary, with a firearm specification; two counts of kidnapping, *Page 3 
each with a firearm specification; one count of gross sexual imposition; six counts of aggravated murder for the murder of Land, each with firearm specifications and aggravating circumstances specifications (capital offense); six counts of aggravated murder for the murder of Muha, each with firearm specifications and aggravating circumstances specifications (capital offense); one count of receiving stolen property; and one count of grand theft. Herring's case went to trial. The jury found him guilty on all charges except for the gross sexual imposition charge. During the sentencing phase, the jury returned a recommendation of life imprisonment without parole for each of the two murders.
 {¶ 8} "The trial court sentenced Herring to a total of twelve years for the firearm specifications. He received three years on each of the firearm specifications in the two kidnapping counts; three years on the firearm specifications for the aggravated murder of Land; and three years on the firearm specifications for the aggravated murder of Muha. The trial court sentenced Herring to a total of fifty-three years for two counts of aggravated robbery, two counts of kidnapping, one count of aggravated burglary, one count of receiving stolen property, and one count of grand theft. The trial court followed the jury's recommendation and sentenced Herring to two life terms in prison without the possibility of parole for the murders of Land and Muha. The trial court held that consecutive sentences were necessary to fulfill the purposes of R.C. 2929.11. Therefore, Herring was sentenced to serve the twelve years for the firearm specifications first, followed by the fifty-three year sentence for the other charges followed by the first life sentence, followed by the second life sentence. This timely appeal followed." ¶ 2-7.
 {¶ 9} Following our decision, Herring appealed to the Ohio Supreme Court. It did not accept his case for review.
 {¶ 10} Yarbrough was also tried for his acts in the above crimes. He received a death sentence. Thus, his direct appeal went straight to the Ohio Supreme Court. Upon review, the Ohio Supreme Court vacated his death sentence. State v. Yarbrough, 104 Ohio St.3d 1, 2004-Ohio-6087. It explained that Ohio was without jurisdiction to convict Yarbrough of aggravated murder because the murders did not occur in Ohio. Under R.C.2901.11, Ohio did not have jurisdiction over the murders *Page 4 
since they occurred in Pennsylvania, even though the felony portion of the aggravated murder charges occurred in Ohio. Id. at ¶ 34-57.
 {¶ 11} Following that decision, Herring filed a petition for post-conviction relief pursuant to R.C. 2953.21. Herring admitted that the petition was filed outside of the 180 day limit that is set forth in R.C. 2953.21, however, he asserts that he meets the requirements in R.C.2953.23(A)(1) which allow for petitions to be filed late.
 {¶ 12} The trial court reviewed his petition and a hearing was held on the matter. The trial court held that the murder convictions and sentences for those convictions were required to be vacated on the basis of Yarbrough. It explained that the timeliness of the motion is not an issue for the homicide convictions because subject matter jurisdiction can be collaterally attacked at any time. However, as to the remaining convictions, the trial court held that the petition was untimely and the requirements in R.C. 2953.23(A)(1) were not met for the allowance of an untimely petition. Herring timely appeals raising two assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 13} "THE TRIAL COURT ERRED BY DENYING APPELLANTS PETITION FOR POST CONVICTION RELIEF BASED UPON THE PETITION NOT BEING TIMELY FILED."
 {¶ 14} We review a trial court's decision to deny a petition for post-conviction relief without a hearing under a de novo standard of review. See State v. Miller, 4th Dist. No. 01CA2614, 2002-Ohio-407.
 {¶ 15} R.C. 2953.21(A)(2) clearly states:
 {¶ 16} "Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court."
 {¶ 17} Herring admits that the petition was filed outside of the 180 days, however, he argues that the exception to that rule, provided in R.C. 2953.23(A)(1), is applicable to him. R.C. 2953.23(A)(1) states: *Page 5 
 {¶ 18} "(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
 {¶ 19} "(1) Both of the following apply:
 {¶ 20} "(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
 {¶ 21} "(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."
 {¶ 22} As is shown above, this statute mandates that subsections (a) and (b) must be met in order for an untimely petition to be considered by a trial court. Subsection (a) contains two parts; if either one is found, then subsection (a) is met. The first part is that "petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief."
 {¶ 23} Herring's argument is that his trial counsel was ineffective for failing to raise issues regarding Ohio's subject matter jurisdiction over the homicide charges. He contends that had this argument been raised, the charges for murder would have been dismissed and the majority of evidence concerning the murders would not have been admitted at trial.
 {¶ 24} He is correct that in Yarbrough, the Ohio Supreme Court held that Ohio did not have jurisdiction over the homicides. However, that does not help him meet this first part of R.C. 2953.23(A)(1)(a). Under this subsection, there must be an *Page 6 
unknown fact that has come to light. In Herring's case, all facts were known to him and his counsel at the time of trial. He knew that the state alleged that the victims were killed in Pennsylvania.
 {¶ 25} It is recognized that it took the Ohio Supreme Court to determine that Ohio did not have jurisdiction over the murders. However, that opinion does not amount to discovery of facts. The facts were already known. The Ohio Supreme Court merely applied those facts to the homicide jurisdiction statute, R.C. 2901.11(B). Thus, his argument is based on a legal theory, not a newly discovered fact. A legal theory does not satisfy the "fact" requirement in R.C. 2953.23(A)(1)(a).State v. Williamitis, 2d Dist. No. 21321, 2006-Ohio-2904. TheWilliamitis court explained:
 {¶ 26} "The `facts' contemplated by this provision are the historical facts of the case, which occurred up to and including the time of conviction. State v. Czaplicki (May 29, 1998), Montgomery App. No. 16589. The purpose behind R.C. 2953.23 is to `permit trial courts to consider factual information that may come to light after a defendant's trial, not to permit defendants to advance new legal theories using the same underlying facts.' State v. Hurst (Jan. 10, 2000), Stark App. No. 1999CA00171; see, also, State v. Melhado, Franklin App. No. 05AP-272,2006-Ohio-641, ¶ 19; State v. Sturbois (Sept. 27, 1999), Athens App. No. 99CA16." Williamitis, 2006-Ohio-2904, at ¶ 18.
 {¶ 27} Consequently, as Herring is not claiming that there is a new fact that he was prevented from discovering, and since all facts were known which could have led to the discovery that Ohio did not have jurisdiction, Herring fails to meet the first part of R.C.2953.23(A)(1)(a).
 {¶ 28} The second part of R.C. 2953.23(A)(1)(a) is that the petition must rely on a new federal or state right that the "United State Supreme Court" has recognized. Herring fails to meet this prong because his petition is not based upon the United States Supreme Court recognizing a new federal or state right. His petition is admittedly based on theOhio Supreme Court's decision in Yarbrough. The clear language of the statute indicates that the petition must be based upon the United States Supreme Court's decision, not an Ohio Supreme Court decision. Thus, for this *Page 7 
reason alone Herring fails to meet the exception for consideration of an untimely petition.
 {¶ 29} Yet, even if we could find that an Ohio Supreme Court decision could be used as a basis for the petition, the decision reached inYarbrough was not the recognition of a new federal or state right. TheYarbrough decision was based upon R.C. 2901.11, Ohio's criminal law jurisdiction statute. In Yarbrough, the Court explained that the language of the statute did not invoke Ohio jurisdiction over the murders. It went further to explain that:
 {¶ 30} "Apparently, the prosecutor and the trial judge misconstrued the `course of criminal conduct' provisions in R.C. 2901.12(H), the state's venue statute, as applicable to jurisdiction over the homicides. But the state's venue statute provides no basis for asserting jurisdiction over out-of-state murder offenses. R.C. 2901.12(H) provides, `When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.' However, as the Legislative Service Committee comments to R.C. 2901.12 state, This section presupposes that the state has jurisdiction to try an offender, and speaks to the question of where the trial is to take place.'"Yarbrough, 104 Ohio St.3d 1, at ¶ 46.
 {¶ 31} This is not a new state right that was being recognized. Rather, it was an explanation as to why the prosecutor and trial court were incorrect in their belief that Ohio had jurisdiction over the homicides. Herring argues that because the state vigorously argued that it had jurisdiction is proof that the Ohio Supreme Court has recognized a new state right. The fact that the state believed that it had jurisdiction to bring murder charges against Yarbrough and Herring is not an indication of whether the Ohio Supreme Court recognized a new state right that applies retroactively to persons in Herring's situation. Any time the Ohio Supreme Court makes a decision, it is not a recognition of a new state right that applies retroactively. Likewise, any time the state is wrong in their argument does not render a subsequent opinion by a court a recognition of a new state right. *Page 8 
 {¶ 32} Moreover, the tone of the Yarbrough decision indicates that it is not a new state right that was being recognized. The Court strongly indicates that the trial court and counsel on both sides should have been aware that Ohio did not have jurisdiction over the homicides due to the language of the jurisdictional statute, R.C. 2901.11(B). Nowhere in the opinion does it indicate that this is a new state right, but rather seems to indicate that this is what the law has always been under that version of the statute. The opinion did not overrule prior case law, nor did it render any part of the statute unconstitutional.
 {¶ 33} Considering all the above, we must conclude that the decision did not recognize any new right. Thus, even if we assumed that an Ohio Supreme Court opinion would be applicable in this cause, the argument still fails because Yarbrough did not recognize a new state right that would apply retroactively.
 {¶ 34} As stated above, in order for the petition to be deemed timely, both subsection (a) and (b) had to be found. Consequently, as Herring cannot meet R.C. 2953.23(A)(1)(a), the trial court correctly determined that the petition was untimely and accordingly denied it.
 {¶ 35} Having found that R.C. 2953.23(A)(1)(a) was not met, there is no need to address subsection (b). However, in the interest of being thorough, we will take this opportunity to address it. As aforementioned, subsection (b) indicates that Herring must show by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which he was convicted. As stated above, Herring argues that the constitutional error in this case was ineffective assistance of counsel in failing to raise jurisdictional issues concerning the murder charges. He claims that without jurisdiction over the murders, much of the information concerning the murders would not have been admitted. Consequently, according to him, admission of so much evidence concerning the murders was prejudicial and would have been inadmissible.
 {¶ 36} The Ohio Supreme Court in Yarbrough upheld the conviction for robbery, burglary, kidnapping, gross sexual imposition and theft despite the fact that the convictions for homicide were vacated based on lack of subject matter jurisdiction. Herring was convicted of robbery, burglary, murder, receiving stolen property and *Page 9 
theft. While he was charged with gross sexual imposition, the jury found him not guilty on that charge. The evidence offered against both Yarbrough and Herring was similar. The Ohio Supreme Court noted that there was overwhelming evidence to support the other convictions. Thus, as the two cases are substantially the same, it is difficult to conclude that a reasonable trier of fact could not have found Herring guilty of the crimes.
 {¶ 37} Furthermore, the jury's own verdict in this case indicates that it was able to decide each count based upon the evidence relating to that count. As stated above, Herring was charged with GSI. However, the jury found him not guilty of this crime. This is an indication that even despite introduction of evidence concerning the murders, the jury would still have been able to look at each count of the indictment and make a determination based upon the evidence relevant to that charge. Thus, it cannot be concluded that prejudice resulted from the admission of evidence concerning the murders. Consequently, Herring cannot meet subsection (b) under R.C. 2953(A)(1).
 {¶ 38} For the above stated reasons, Herring cannot satisfy R.C.2953.23(A)(1), the requirements which allow for the consideration of an untimely post conviction petition. Thus, the trial court properly denied the petition on that basis. This assignment of error has no merit.
 SECOND ASSIGNMENT OF ERROR {¶ 39} "THE TRIAL COURT ERRED IN DENYING APPELLANTS PETITION FOR POST CONVICTION RELIEF ON ITS MERITS."
 {¶ 40} We could end our analysis of this case by relying on the above reasoning that the petition was untimely and did not meet the requirements for consideration of an untimely petition. However, in the interest of justice we will address this assignment of error. Herring's argument regarding the merits is that trial counsel and appellate counsel were ineffective for failing to raise issues regarding the lack of jurisdiction Ohio had over the murder charges.
 {¶ 41} The Ohio Supreme Court has explained the review for an ineffective assistance of counsel claim for post-conviction purposes as: *Page 10 
 {¶ 42} "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant. State v.Jackson, supra; State v. Lytle (1976), 48 Ohio St.2d 391; see State v.Hester, supra." State v. Cole (1982), 2 Ohio St.3d 112, 114.
 {¶ 43} The test for ineffective assistance of counsel is a two-prong test set forth in Strickland v. Washington (1984), 466 U.S. 668.Strickland requires that the defendant show first, that counsel's performance was deficient and second, that counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687. In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.; State v.Bradley (1989), 42 Ohio St.3d 136, 143. A court may dispose of a claim of ineffective assistance of counsel by analyzing only the second prong of the test where defendant fails to show sufficient resulting prejudice. In re J.J., 9th Dist. No. 21386, 2004-Ohio-1429, at ¶ 16.
 {¶ 44} Rather than pass judgment on whether the failure to raise subject matter jurisdiction resulted in deficient performance, this issue can be resolved solely by the prejudice prong ofStrickland. As was explained above, under subsection (b) of R.C.2953.23(A)(1), the result in this case would not have been different. That analysis equally applies here. The jury's verdict, which included the not guilty verdict on gross sexual imposition, is an indication that the jury was able to separate the evidence for each charge. Furthermore, given the similarities between this case and the Yarbrough case, the Ohio Supreme Court's indication that there was evidence to support the non-murder charges is an indication that prejudice did not result from admission of evidence concerning the murders. There is little to indicate that the jury would not have found Herring guilty of burglary, robbery, kidnapping, receiving stolen property and theft, all which included gun specifications. *Page 11 
 {¶ 45} More importantly, as the trial court explains so adequately in its judgment entry, the murders were relevant to the remaining charges and actually went to the heart of the kidnapping charges. The trial court provides almost three pages of explanation to support that decision. That explanation is sound.
 {¶ 46} The indictment in Herring, regarding the kidnapping charge, stated that Herring restrained the liberty of each victim "to facilitate the commission of any felony or flight thereafter and/or to terrorize and to inflict serious physical harm" on each victim. Evidence that Herring took the victims at gunpoint from their home across state lines, marched them up a hill and then shot them in the head, is relevant to prove that Herring terrorized and/or inflicted serious physical harm on the victims. Furthermore, the kidnapping did not end until the victims were shot. As the trial court explains:
 {¶ 47} "The State is certainly allowed to prove the Kidnapping Offense from the beginning to the end. It began when the victims were removed from their beds and ended with the deaths of the victims. To disallow the State from showing the end of the Kidnap would be to prevent the state from showing part of what was still a Kidnapping and would leave the jury wondering why the victims did not testify." 02/01/06 J.E.
 {¶ 48} Consequently, prejudice cannot be found. Thus, even when the merits of post-conviction are reached, the petition still fails.
 {¶ 49} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1