■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS P. KINSELLA, Appellant.—Judgment reversed on the law and facts, defendant's motion to suppress granted and indictment dismissed. Memorandum: Defendant appeals from a judgment convicting him of criminal possession of a weapon in the third degree. He contends that the court erred in denying his motion to suppress because the knife was seized from him as a result of an unlawful search.

At the suppression hearing, Lieutenant Frey, a member of the Rochester Police Department, testified that at approximately 1:30 A.M. on October 2, 1985 he received a dispatch that a grey cassette case had been stolen from a vehicle

nearby and that the owner had observed a lone white male about 18 years old, wearing blue jeans and a blue jeans jacket, stealing the case and heading west from Culver Road. As the officer turned onto Monroe Avenue, he observed two white males walking in a direction away from Culver Road, one of whom was carrying a grey cassette case. He stated that they were walking in the direction of a place commonly known as dealing in stolen property. The officer approached the two men and asked for identification. Defendant, who was wearing white pants, a black leather jacket and sneakers, produced identification and answered the officer's inquiries with respect to where he had been and where he was going. The other man, who was carrying the cassette case, had no identification. The officer called for assistance and two other police cars responded. Lieutenant Frey told the two men that he was investigating a larceny which had just taken place. According to his testimony, he asked the young men if they would accompany him to the scene of the crime for possible identification and they agreed to go. Before Frey placed defendant in the back of one of the other police cars, he patted him down and found a switchblade knife in his jacket pocket. Defendant was then arrested for possession of the knife. According to defendant, he was not asked to accompany the officers back to the crime scene but was frisked and arrested for possession of the knife. He testified that he was not told that he was being taken to the crime scene but that he thought he was being taken to the station to be booked on the knife charge.

The suppression court found that the circumstances did not justify a stop and frisk but that the search was proper as a precautionary procedure before a possible suspect was placed in the rear of a police vehicle. We find that the circumstances established on this record did not justify a frisk of defendant and that the motion to suppress the knife should have been granted.

We agree with the suppression court that the circumstances did not justify a stop and frisk (see, CPL 140.50). The information transmitted to Lieutenant Frey regarding the larceny suspect was that he was a white male, approximately 18 years old, wearing blue jeans and a jeans jacket, carrying a grey cassette case, and that he had been seen by the victim walking alone away from the scene. The mere fact that defendant was observed by Lieutenant Frey walking down the street with the individual who met that description did not give rise to reasonable suspicion that defendant was engaged in criminal activity (see, People v Martin, 32 NY2d 123). Defendant

answered the officer's questions and produced identification, and thus there was nothing in his behavior to arouse the officer's suspicions. Since there was no basis for suspecting defendant of any criminal activity, there was no basis to detain him by placing him in a police car and no right to conduct a frisk. Contrary to the findings of the suppression court, the officer was not alone and was not placing two suspects in the back of his vehicle for transportation. The officer testified that two police cars responded to his call for assistance and that he placed defendant in the back of one vehicle and Fakovic, defendant's companion, in the back of the other vehicle, both of which were equipped with cages. Although a police officer may reasonably pat down a person before he places him in the back of a police vehicle, the legitimacy of that procedure depends on the legitimacy of placing him in the police car in the first place. The procedure may properly be applied to one in lawful custody, but may not be used as justification for an impermissible search *(see, People v Howington,* 83 AD2d 756; *People v Hauser,* 80 AD2d 460, 464).

All concur, except Balio, J., who dissents and votes to affirm in the following memorandum:

Balio, J. (dissenting). I respectfully disagree and would affirm the judgment. While I agree with the majority that at the time of the initial police encounter Lieutenant Frey lacked reasonable suspicion to believe that defendant was engaged in criminal activity, I cannot conclude that immediately prior to the frisk, the circumstances did not warrant a protective frisk.

At the time defendant was initially detained, the police officer had a founded suspicion that criminal activity was afoot and had a right to inquire *(People v De Bour,* 40 NY2d 210, 223; *People v Cantor,* 36 NY2d 106, 112-113). After defendant answered some preliminary questions and produced identification, the officer then questioned his companion who was unable to produce identification. After the companion disclosed the contents of the cassette case, Lieutenant Frey explained to both persons that he was investigating a recent larceny and wanted to take them back to the scene to see if they could be identified by the victim. There is evidence in the record to support the suppression court's conclusion that defendant consented to go, and that determination should be accorded great weight *(People v Prochilo,* 41 NY2d 759, 761). The officer's testimony on the consent issue was not incredible as a matter of law nor patently tailored to nullify constitu-

tional objections *(see, People v Collins,* 137 AD2d 542), and I see no reason to disturb the suppression court's resolution of credibility issues.

In *People v Howington* (83 AD2d 756), this court noted that it did not question the soundness of a departmental policy requiring the patdown of all suspects about to enter a police vehicle if applied to one lawfully in custody, but that the policy could not be "employed as justification to search a person impermissibly seized without probable cause for the purpose of transporting him to police headquarters for further interrogation". In my view, defendant was not impermissibly seized and having consented, the routine frisk was no more than an exercise of the sound policy approved in *Howington.* (Appeal from judgment of Monroe County Court, Celli, J., at trial; Reed J., on suppression issue—criminal possession of weapon, third degree.) Present—Denman, J. P., Green, Pine, Balio and Lawton, JJ.