OPINION
{¶ 1} Defendant-appellant, Clint Thomas, appeals from a Jefferson County Common Pleas Court judgment overruling his motion to suppress drugs found on his person after a traffic stop. This appeal follows appellant's conviction on charges of possession of drugs, trafficking in drugs, and resisting arrest after he entered a no contest plea to the charges.
 {¶ 2} On March 18, 2007, Ohio State Highway Patrol Sergeant Timothy Timberlake noticed a vehicle with excessive window tint pass by him. Sergeant Timberlake stopped the vehicle, which was driven by appellant. As he approached the passenger-side window, Sergeant Timberlake was able to smell the strong odor of air freshener coming from the vehicle even though the windows were rolled up. He knocked on the passenger window in order to get the passenger to roll the window down. Sergeant Timberlake asked appellant for his license, registration, and proof of insurance, and appellant complied. Sergeant Timberlake then asked appellant to exit the vehicle. The two men went to the rear of appellant's car between appellant's car and the police cruiser.
 {¶ 3} Sergeant Timberlake told appellant that he was going to issue him a citation for a seat belt violation and excessive window tint. He then asked appellant if he had any weapons on him. Appellant stated that he did not. Sergeant Timberlake asked appellant if he would consent to a pat down in order to be sure. Sergeant Timberlake stated that the reason he wanted to pat appellant down was because he was going to place appellant in the back of his cruiser while he issued him the citation. He also stated that the only reason he wanted to place appellant in the back of his cruiser while he issue the citation was for his own convenience.
 {¶ 4} Once Sergeant Timberlake began to pat appellant down, appellant began "dancing" around. Appellant took something from his pocket and put it behind his back. A struggle then ensued between Sergeant Timberlake and appellant. Appellant dropped the item he was hiding on the ground. It turned out to be 12 individually packaged rocks of cocaine.
 {¶ 5} A Jefferson County grand jury indicted appellant on one count of *Page 2 
possession of crack cocaine, a third-degree felony in violation of R.C. 2925.11(A)(C)(4)(c), one count of trafficking in drugs, a third-degree felony in violation of R.C. 2925.03(A)(2)(C)(4)(d), and one count of resisting arrest, a second-degree misdemeanor in violation of R.C. 2921.33(A). A forfeiture specification accompanied the trafficking count.
 {¶ 6} Appellant filed a motion to suppress the crack cocaine found as a result of the pat-down search. The trial court held a hearing on the motion where it heard testimony from Sergeant Timberlake and viewed the dashboard video of appellant's traffic stop. The court subsequently overruled the motion to suppress.
 {¶ 7} Consequently, appellant entered a plea of no contest to the charges in the indictment. The trial court found appellant guilty as charged. It then sentenced appellant to two years for possession, two years for trafficking, and 90 days for resisting arrest. It ordered that appellant serve the sentences concurrently for a total of two years in prison. The court also ordered that the $6,095 seized from appellant was forfeited. The court continued appellant's bond pending this appeal.
 {¶ 8} Appellant filed a timely notice of appeal on September 26, 2007.
 {¶ 9} Appellant raises a single assignment of error, which states:
 {¶ 10} "THE TRIAL COURT ERRED AS A MATTER OF BOTH LAW AND FACT WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS."
 {¶ 11} Appellant asserts that the trial court should have granted his motion to suppress. He contends that it was unreasonable for Sergeant Timberlake to place him in the cruiser as a matter of convenience. Therefore, it follows, argues appellant, that the pat-down search prior to placing him in the cruiser was likewise unreasonable.
 {¶ 12} Appellant argues that there was no reason for Sergeant Timberlake to place him in the cruiser. He notes that Sergeant Timberlake was merely going to issue him citations for excessive window tint and a seatbelt violation, which are not arrestable offenses. Additionally, appellant points out that there were no dangerous conditions on the roadside that would have necessitated Sergeant Timberlake *Page 3 
placing him in the cruiser for the sake of safety.
 {¶ 13} Appellant further argues that while Sergeant Timberlake stated that the reason he wanted to place appellant in the cruiser was for convenience, this was merely a pretext. Appellant contends that Sergeant Timberlake's real reason for wanting to place appellant in the cruiser was so that he could conduct a pat down for drugs.
 {¶ 14} Next, appellant asserts that his consent to the pat-down search did not make the search reasonable. First, he points out that Sergeant Timberlake testified that he had already determined that he was going to place appellant in the cruiser for his own convenience before he asked if he could pat him down. Second, appellant argues that his consent cannot be considered to have been voluntarily given. He contends that he was under an unlawful detention once Sergeant Timberlake ordered him out of his car and decided that he was going to place appellant into the cruiser for the sake of convenience.
 {¶ 15} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing Tallmadge v. McCoy (1994),96 Ohio App.3d 604, 608, 645 N.E.2d 802. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994), 96 Ohio App.3d 649, 653,645 N.E.2d 831. An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. State v. Rice (1998), 129 Ohio App.3d 91, 94, 717 N.E.2d 351. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id.
 {¶ 16} In this case, the trial court did not make any factual findings. It simply *Page 4 
overruled appellant's suppression motion. Yet we must still determine whether the trial court applied the correct legal standard and whether its decision is supported by substantial credible evidence.
 {¶ 17} The Ohio Supreme Court considered when it is reasonable for an officer conducting a routine traffic stop to place the driver in the police cruiser and to first conduct a pat-down search for weapons inState v. Lozada, 92 Ohio St.3d 74, 748 N.E.2d 520, 2001-Ohio-149. The Court held:
 {¶ 18} "1. During a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition.
 {¶ 19} "2. During a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer." Id. at paragraphs one and two of the syllabus.
 {¶ 20} In Lozada, the defendant was stopped for speeding. The trooper asked the defendant to exit his vehicle. The trooper told the defendant that he was going back to his cruiser to check the defendant's license and registration. The trooper requested that the defendant go with him. The trooper asked the defendant if he had any weapons on him, to which the defendant responded "no." The trooper then told the defendant that he was going to conduct a pat down to make sure. While executing the pat down, the trooper noticed that the defendant pulled away when he got to the area of the defendant's pocket. The trooper therefore reached into the defendant's pocket and discovered cocaine. The defendant was arrested and charged with possession of cocaine. The trial court overruled the defendant's motion to suppress the cocaine. The defendant appealed arguing that there was no probable cause justifying the trooper's search that resulted in the discovery of the cocaine. The appellate court agreed and the state appealed to the Ohio Supreme *Page 5 
Court.
 {¶ 21} In describing the issue at hand the Supreme Court, quoting a New York Court, noted: "`Although a police officer may reasonably pat down a person before he places him in the back of a police vehicle, the legitimacy of that procedure depends on the legitimacy of placing him in the police car in the first place.'" Id. at 76, quoting People v.Kinsella (1988), 139 A.D.2d 909, 911, 527 N.Y.S.2d 899, 901. The Court went on to reason:
 {¶ 22} "The placement of a driver in a patrol car during a routine traffic stop may be constitutionally permissible. However, that alone is not a legitimate justification to subject the driver to a pat-down search for weapons. While the intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop may be relatively minimal, the level of intrusion on the driver dramatically increases when the driver is subject to a pat-down search for weapons before entering the patrol car. To subject a driver to such an intrusion, when the underlying reason for placing him or her in the patrol car is mere convenience, would effectively eviscerate the Terry [v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889] standard without justification." (Internal citation omitted). Id. at 76.
 {¶ 23} The Court observed that if a police officer, during every routine traffic stop, could order the driver into the back of the police cruiser, and therefore, conduct a pat-down search for the officer's safety prior to placing the driver in the cruiser, then every routine traffic stop could be transformed into a Terry stop with an accompanying pat-down search. Id., quoting O'Hara v. State
(Tex.Crim.App.2000), 27 S.W.3d 548, 553.
 {¶ 24} Thus, the Court concluded that to the extent that the trooper's pat-down search of the defendant was due to his practice of doing so, the search of the defendant for weapons was unreasonable. Id. at 77.
 {¶ 25} The Court went on to address when it may be reasonable for an officer to pat down a driver and place the driver in his cruiser. It reiterated its holding in State v. Evans (1993), 67 Ohio St.3d 405,618 N.E.2d 162, at paragraph one of the *Page 6 
syllabus, stating that a driver may be subjected to pat-down search for weapons when the officer has a "lawful reason" to place the driver in the cruiser. Lozada, at 77. The Court concluded that it is reasonable to place the driver in the cruiser and subject him or her to a pat-down search for weapons when placement of the driver in the cruiser is justified to protect the officer or the driver from a dangerous condition. Id. at 79.
 {¶ 26} In the present case, appellant contends that Sergeant Timberlake's only stated reason for wanting to place him in the cruiser was for the sergeant's own convenience. This is true.
 {¶ 27} At the suppression hearing, Sergeant Timberlake testified that the only reason he wanted appellant to get into the cruiser was so he could issue the citation in the cruiser. (Tr. 16-17). Sergeant Timberlake further testified that this was for his own convenience. (Tr. 21-22, 26). He stated that he could have simply issued appellant the citation on the roadside instead of requesting that appellant enter his cruiser. (Tr. 16).
 {¶ 28} Additionally, Sergeant Timberlake testified as to the conditions at the time of the traffic stop. He stated that the pavement was dry, the visibility was clear, there were no adverse weather conditions, traffic was light, and the stop was made in a rural area. (Tr. 12). Sergeant Timberlake admitted that he was not in any kind of danger from the elements or from the roadway. (Tr. 12).
 {¶ 29} Based on this evidence alone, it seems clear that Sergeant Timberlake acted in violation of Lozada. There were no dangerous conditions facing Sergeant Timberlake or appellant which would have necessitated that they leave the roadside and enter the police cruiser. Per Sergeant Timberlake's own testimony, the only reason he wanted to place appellant in his cruiser was for his own convenience. Thus, pursuant to Lozada, it would appear that Sergeant Timberlake's search for weapons before placing appellant in the cruiser was unreasonable.
 {¶ 30} However, this is not the only evidence we must consider. We must also consider the other facts surrounding the pat-down search. Specifically we must *Page 7 
consider whether appellant freely consented to the search. The rest of the facts adduced at the suppression hearing are as follows.
 {¶ 31} Sergeant Timberlake testified that upon stopping appellant, he asked appellant for his license, registration, and proof of insurance, which appellant provided. (Tr. 6). He next asked appellant to exit his vehicle and appellant complied. (Tr. 6). Sergeant Timberlake advised appellant that he stopped him for excessive window tint. (Tr. 6). Sergeant Timberlake then asked appellant whether he had any weapons on him. (Tr. 20). He asked appellant if he could pat him down for weapons. (Tr. 7). Appellant verbally agreed, turned around, and put his arms out. (Tr. 7, 26-27).
 {¶ 32} Sergeant Timberlake stated that at this point appellant was very nervous, rigid, and avoided eye contact with him. (Tr. 7). He further testified that when he reached to touch appellant's left side, appellant would pull away. (Tr. 7-8). Sergeant Timberlake stated that there was a bulge in appellant's front left breast pocket. (Tr. 8). Appellant told Sergeant Timberlake that it was money he had won gambling. (Tr. 8). Sergeant Timberlake asked to see it and appellant showed him a bag full of money, approximately three to four thousand dollars. (Tr. 8). Before appellant pulled the money out of his left breast pocket, appellant first stuck his hand in his left trouser pocket. (Tr. 8). Sergeant Timberlake stated that appellant danced around every time he attempted to pat him. (Tr. 9). He then asked appellant if he would show him what he had in his trouser pocket. (Tr. 9). Appellant pulled something out of his pocket and put it behind his back. (Tr. 9). At this time, Sergeant Timberlake stated that he became concerned that appellant might have a weapon. (Tr. 9). He then grabbed appellant's arm and a struggle ensued. (Tr. 9). The items in appellant's hand were 12 individually-wrapped rocks of cocaine. (Tr. 10).
 {¶ 33} At the suppression hearing, the state argued and the trial court agreed that appellant consented to the pat-down search.
 {¶ 34} Traffic stops are seizures for purposes of theFourth Amendment, even *Page 8 
when the resulting detention is temporary and non-custodial, lasting only until a citation is served and the driver is free to leave.State v. Howard, 2d Dist. No. 20321, 2004-Ohio-5287, at ¶ 30. Once an officer has effectuated a valid traffic stop, the officer may, in the interest of protecting his or her safety, order the driver and passengers out of the vehicle while the officer prepares a traffic citation. Pennsylvania v. Mimms (1997), 434 U.S. 106, 98 S.Ct. 330,54 L.Ed.2d 331.
 {¶ 35} The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. Ordinarily, police must have a warrant in order to conduct a search pursuant to the Fourth Amendment. However, consent to search is an exception to the warrant requirement.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854; State v. Posey (1988), 40 Ohio St.3d 420, 427,534 N.E.2d 61.
 {¶ 36} Whether consent to search is voluntarily given is a question of fact to be determined from all of the circumstances surrounding the search. Ohio v. Robinette (1996), 519 U.S. 33, 40, 117 S.Ct. 417,136 L.Ed.2d 347. The state has the burden of proving that the defendant's consent to search was given freely and voluntarily. Florida v.Royer (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229. "[W]hether consent to search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality of the circumstances." Schneckloth,412 U.S. at 227.
 {¶ 37} In this case, appellant seemed to agree to the search both orally and by his nonverbal body language, i.e. turning around and putting his hands out to his sides. Appellant contends that this consent, however, was not voluntary because by this point in time, Sergeant Timberlake had already determined that he was going to place appellant in his cruiser and, therefore, that he was going to conduct a pat-down search. Appellant contends that because Sergeant Timberlake had already decided that he was going to place appellant in his cruiser in violation of Lozada, any consent appellant gave was not voluntary.
 {¶ 38} Appellant argues that his consent was not voluntary because it was *Page 9 
obtained as a result of a show of authority and duress. In support appellant points out that Sergeant Timberlake ordered him to pull over and stop his vehicle, told him that he violated the law, and ordered him out of his vehicle. These facts however, are the normal pattern of facts for any traffic stop. Most traffic stops occur because the officer notices a traffic violation and orders the driver to pull over using his overhead lights and sirens. Next, the officer tells the driver why he or she has been stopped. Then, pursuant to Mimms, supra, the officer frequently asks the driver to step out of his or her vehicle. Nothing about this set of facts demonstrates that the driver cannot freely and voluntarily give or refuse consent to a requested search by the officer.
 {¶ 39} But in addition to these facts, before asking if appellant would consent to a pat down, Sergeant Timberlake told appellant that he was going to take him back to the cruiser and issue him a citation. If the officer makes a show of authority sufficient to communicate to a reasonable person that he was not free to leave, the consent to search is not voluntarily given. State v. Ingram (1992), 82 Ohio App.3d 341,344, 612 N.E.2d 454, citing Florida v. Bostick (1991), 501 U.S. 429,111 S.Ct. 2382, 115 L.Ed.2d 389. This is a factual determination for the trial court to make. Id.
 {¶ 40} A reasonable person in appellant's position would not feel free to leave at the point in time when Sergeant Timberlake requested permission to conduct a pat down. At this time, Sergeant Timberlake told appellant that he was going to issue him a citation and told him that he was going to place him in the cruiser. It was entirely reasonable for appellant to feel that he was not free to leave at this point. A reasonable person would likely feel that he was required to accompany the officer to his cruiser and await the issuance of the citation. "The potentially coercive effect of the roadside detention is far more compelling when the officer requests permission to searchbefore completing the citation." (Emphasis sic.) State v. Bickel, 5th Dist. No. 2006-COA-034, 2007-Ohio-3517, at ¶ 26. "Once thedetention is ended by the issuance of the citation a reasonable person would at least inquire as to whether or not he is free to go on his way." (Emphasis added.) Id. at ¶ 33. *Page 10 
 {¶ 41} Had appellant attempted to leave once Sergeant Timberlake told him that he violated the law and that the sergeant was going to issue him a citation, Sergeant Timberlake could have arrested appellant for refusing to sign the citation, R.C. 2935.26(A)(3), or obstructing official business, R.C. 2921.31(A). Thus, appellant was not free to leave.
 {¶ 42} Given these circumstances, appellant's consent to the pat-down search was made only pursuant to a show of authority and his reasonable belief that he was not free to leave. Thus, appellant's consent was not freely and voluntarily given.
 {¶ 43} Since appellant's consent was not freely given and since Sergeant Timberlake stated that his sole purpose for wanting to pat appellant down and place appellant in the cruiser was for his convenience, there was no basis for the pat-down search of appellant. Thus, the trial court should have granted appellant's motion to suppress the drugs found as a result of the search.
 {¶ 44} As a final note, appellant also argues that Sergeant Timberlake's stated reason, his convenience, for wanting to place appellant in the cruiser and pat him down was a pretext to search for drugs. Appellant points to Sergeant Timberlake's testimony that he suspected appellant of having drugs based on the strong odor of air fresheners in the car, the nervousness of the occupants, the excessive window tint, and the "lived in" look of the vehicle. (Tr. 23-24). An officer cannot conduct a protective search as a pretext for a search for contraband, a search for convenience, or as part of his or her normal routine or practice. State v. Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, ¶ 16, citing Evans, 67 Ohio St.3d at 414; Minnesota v.Dickerson (1993), 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334;Lozada, 92 Ohio St.3d at 77. But we need not determine whether Sergeant Timberlake's stated reason of convenience was a pretext for a search for drugs. Since we have determined for the above reasons that the the pat-down search was unreasonable, this argument is moot.
 {¶ 45} Accordingly, appellant's sole assignment of error has merit.
 {¶ 46} For the reasons stated above, the trial court's judgment is reversed and *Page 11 
appellant's motion to suppress is hereby granted. Appellant's conviction is vacated and the matter is remanded for further proceedings pursuant to law and consistent with this Court's opinion.
 Waite, J., concurs. DeGenaro, P.J., concurs. *Page 1