[Cite as *State v. Burnette*, 2010-Ohio-6581.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    09 CO 44 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | PARTIAL OPINION |
| | ) | AND |
| KELLY BURNETTE, | ) | JUDGMENT ENTRY |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Common Pleas
                                Court, Case No. 08CR380.


JUDGMENT:                       Affirmed in part; Appeal continues on
                                single issue identified by Court.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Robert Herron
                                 Prosecuting Attorney
                                 105 South Market Street
                                 Lisbon, Ohio  44432


For Defendant-Appellant:         Attorney Bryan Felmet
                                 1100 Jackson Place
                                 Steubenville, Ohio  43952


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                 Dated:  December 29, 2010

PER CURIAM:

¶{1} Defendant-appellant Kelly Burnette appeals from his conviction of possession of drugs entered in the Columbiana County Common Pleas Court. Counsel has filed a no merit brief. There is a suggestion that the officer should not have frisked appellant before transporting him in the police vehicle. As counsel concedes, an officer, who is transporting a passenger of a car being towed, can properly conduct a pat-down before placing the passenger in the police cruiser.

¶{2} The main issue is whether, during a weapons frisk of a passenger who is being transported to the post in a police vehicle, an officer's plain feel of a tin commonly used to store narcotics justified removal of the tin from appellant's pocket. We conclude that this issue is not wholly frivolous. Present counsel is permitted to withdraw, and we shall appoint new counsel to brief this issue on behalf of appellant.

STATEMENT OF THE CASE

¶{3} On December 14, 2008 at approximately 2:45 a.m., a trooper with the Ohio State Highway Patrol stopped a vehicle driven by Randy Wilhelm. (Tr. 8-9). Appellant was seated in the front passenger seat of the vehicle. Upon approaching the vehicle, the trooper detected a strong odor of alcohol and burnt marijuana. (Tr. 9). The driver made furtive movements and was asked to perform field sobriety tests, on which he performed poorly. Upon deciding to arrest the driver for operating a vehicle under the influence, the officers ordered the vehicle to be towed. (Tr. 11).

¶{4} Appellant also appeared to be inebriated. A bulge could be seen in his jacket pocket where the top of a can was visible. (Tr. 13-14). Because of appellant's apparent intoxication, the trooper determined that he needed to be driven to the post to arrange for transportation. (Tr. 23). Before placing him in the patrol car, the trooper patted appellant down. As suspected, the can turned out to be a beer can. (Tr. 14). In moving to appellant's front pants pocket, the trooper felt an open tin box of the type that mints come in. He removed the tin, which contained a small red straw and cocaine residue. Deeper in the same pocket, the trooper then found a folded piece of paper containing .42 grams of cocaine. (Tr. 14-15).

**¶{5}** Appellant was charged with possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree. Appellant filed a motion to suppress evidence and to dismiss the indictment. This motion was heard and overruled. On November 23, 2009, pursuant to a plea agreement, appellant entered a plea of no contest to the charge. The Court accepted the plea and found appellant guilty. The court sentenced appellant to eight months in prison and suspended his operator's license for six months.

**¶{6}** Appellant filed a timely appeal from the sentencing entry. New counsel was appointed. On April 15, 2010, counsel filed a motion to withdraw and a no merit brief. Appellant did not file a *pro se* brief; however, his girlfriend wrote a letter to counsel containing certain arguments. Because counsel then submitted the letter to this court for our consideration of the issues raised therein, it will be considered as presenting proposed assignments of error.

GENERAL LAW

**¶{7}** When appellate counsel seeks to withdraw and discloses that there are no meritorious arguments for appeal, the filing is known as a no merit or an *Anders* brief. See *Anders v. California* (1967), 386 U.S. 738. In this district, it has also been called a *Toney* brief. See *State v. Toney* (1970), 23 Ohio App.2d 203. In *Toney,* this Court established the following guidelines to be utilized when counsel determines that an indigent's appeal is frivolous:

**¶{8}** "An indigent defendant's constitutional right to counsel on his direct appeal requires that court-appointed counsel make arguments in support of the appeal to the best of his ability. If, after a conscientious examination of the case, counsel concludes there are no good grounds for appeal, counsel should so advise the court and request permission to withdraw, accompanying his request with a brief if counsel finds anything in the record that might arguably support the appeal. A copy of counsel's request and brief is to be furnished to the defendant, who is given time to raise any points that he chooses.

**¶{9}** "The appellate court must then examine the record and any arguments presented by counsel or the defendant. If the court agrees that there are no arguable issues, it may grant counsel's request to withdraw and affirm the trial court's judgment.

If the court finds any legal points arguable on the merits, the court shall afford the indigent defendant assistance of counsel to argue the appeal." Id. at 206-207, citing *Anders*, 386 U.S. at 774.

## POTENTIAL WITNESSES

¶{10} Appellant suggests that trial counsel was ineffective because he did not present certain witnesses to testify at trial. Counsel states that as he understands the situation, these potential witnesses could testify that appellant was not knowingly in possession of the cocaine but would not implicate themselves in criminal possession. In addition, counsel states that there appears to have been difficulty in locating and subpoenaing these potential witnesses.

¶{11} In determining whether counsel was ineffective, we use the two-prong *Strickland* test. *State v. Maguire,* 7th Dist. No. 08MA188, 2009-Ohio-4393, ¶17-18. Appellant must initially establish that counsel's performance fell below an objective standard of reasonable representation. *Strickland v. Washington* (1984)*,* 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio.St.3d 136, paragraph two of the syllabus. Counsel is presumed competent. *State v. Thompson* (1987), 33 Ohio.St.3d 1, 10. We do not use hindsight to second-guess trial tactics as there is a wide range of professional competence and of acceptable trial strategy. *State v. Carter* (1995), 72 Ohio.St.3d 545, 558.

¶{12} Appellant must also show that he was prejudiced by counsel's deficient performance. *Strickland,* 466 U.S. at 687. To then demonstrate that he was prejudiced by the deficient performance, the defendant must prove that there exists a reasonable probability that were it not for counsel's serious error, the outcome of the proceedings would have been different. *Keith,* 79 Ohio.St.3d at 534. In evaluating prejudice, we thus consider whether our confidence in the outcome is undermined. *Bradley,* 42 Ohio.St.3d at 142.

¶{13} If this court finds that either prong fails, there is no need to analyze the remaining prong because in order for ineffective assistance of counsel to be shown, both prongs must be established by appellant. *State v. Herring,* 7th Dist. No. 06JE8, 2007-Ohio-3174, ¶43.

**¶{14}** If the witnesses were not willing to implicate themselves in owning the cocaine found in appellant's own pants pocket, then it is difficult to see how counsel was ineffective in failing to present them at a trial that never even occurred because appellant pled no contest. Appellant was fully informed during the plea hearing that by entering a plea of no contest, he was waiving his right to bring witnesses to testify on his behalf. (Plea Tr. 14-15).

**¶{15}** In any event, only issues occurring on the record can be evaluated in a direct appeal. *State v. Hartman* (2001), 93 Ohio.St.3d 274, 299 (if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal); *State v. Ishmail* (1978), 54 Ohio St.2d 402, 406 (the appellate court is limited to what transpired as reflected by the record on direct appeal and cannot rely upon evidence de hors the record). Thus, any allegations concerning the potential content of testimony are not the proper topics for direct appeal, and counsel could properly refuse to raise the issue in a merit brief.

### VIDEOTAPE:

**¶{16}** Appellant also suggests that trial counsel was ineffective because he did not present the videotape of the traffic stop. He believes the videotape of the arrest would have revealed that appellant was handcuffed prior to the pat-down and that he was never read his rights.[1]

**¶{17}** As counsel states, these issues were never raised before the trial court. Once again, only issues occurring on the record can be evaluated in a direct appeal. *Hartman*, 93 Ohio.St.3d at 299. Because the videotape was never introduced into evidence by either the defense or the prosecution, it is not part of the record and therefore cannot be reviewed by this court in the direct appeal. As such, counsel properly filed a no merit brief regarding this argument.

### PLEA HEARING

**¶{18}** Crim.R. 11(C) provides that a trial court must make certain advisements prior to accepting a defendant's guilty or no contest plea to ensure that the plea is entered into knowingly, intelligently, and voluntarily. These advisements are typically

---

[1]In any event, the videotape actually refutes these claims.

divided into constitutional rights and non-constitutional rights. The constitutional rights are: (1) a jury trial; (2) confrontation of witnesses; (3) compulsory process for obtaining witnesses; (4) that the state must prove guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. Crim.R. 11(C)(2)(c); *State v. Veney,* 120 Ohio.St.3d 176, 2008-Ohio-5200, ¶19-21. The trial court must strictly comply with these requirements; if it fails to strictly comply, the defendant's plea is invalid. Id. at ¶31; *State v. Ballard* (1981), 66 Ohio St.2d 473, 477. See, also, *State v. Singh* (2000), 141 Ohio.App.3d 137.

¶{19} The trial court's advisement on the constitutional rights strictly complied with Crim.R. 11(C)(2)(c). Appellant was informed that by pleading no contest he was waiving his right to a jury trial, to confront witnesses against him, to subpoena witnesses in his favor, and to have the state prove at trial each and every element of the offense by proof beyond a reasonable doubt. (Plea Tr. 14-16). He was also advised that if he went to trial he could not be compelled to testify against himself. (Plea Tr. 14-15). Appellant indicated after the explanation of every right that he understood the right. (Plea Tr. 14-16).

¶{20} The non-constitutional rights are that: (1) the defendant must be informed of the nature of the charges; (2) the defendant must be informed of the maximum penalty involved, which includes an advisement on post-release control, if it is applicable; (3) the defendant must be informed, if applicable, that he is not eligible for probation or the imposition of community control sanctions; and (4) the defendant must be informed that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence. Crim.R. 11(C)(2)(a)(b); *Veney,* 120 Ohio.St.3d 176, at ¶10-13.

¶{21} In advising of the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero* (1990), 56 Ohio.St.3d 106, 108. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney,* 120 Ohio.St.3d 176 at ¶15 quoting *Nero,* 56 Ohio.St.3d at 108.

¶{22} As to the non-constitutional rights, appellant was advised of the charge in the indictment, possession of drugs. (Plea Tr. 9, 12-13). The trial court correctly

advised him of the maximum penalty involved for the indicted offense, which was twelve months in prison, a $2,500 fine, and a five-year suspension of his operator's license. (Plea Tr. 12-13). See, also, R.C. 2929.14(A)(5) (stating the maximum term for a fifth degree felony is twelve months); R.C. 2929.18(A)(3)(e) (stating the maximum fine for a fifth degree felony is $2,500).

¶{23} Appellant was also informed that upon release from prison, he could be subject to a period of up to three years post-release control under certain terms and conditions, the violation of which could result in a period of reincarceration of up to one half of any prison term that had been previously given. (Plea Tr. 13). See, also, R.C. 2967.28(C) (indicating that a fifth degree felony is subject to a three-year term of post-release control). In addition, the court informed appellant that if he violated post-release control by commission of a felony, that he could be punished separately for that felony. (Tr. 13). The judgment entry reiterated these notifications.

¶{24} Consequently, there is no indication that the plea was not entered into knowingly, intelligently, and voluntarily. Counsel could properly refuse to file a merit brief on these topics.

PROPRIETY OF PAT-DOWN BEFORE PLACEMENT IN VEHICLE

¶{25} Since possession of a tin with cocaine residue and a straw is an arrestable offense, seizure of the folded paper containing .42 grams of cocaine would be proper as a search incident to a lawful arrest. The preliminary questions are thus whether it was reasonable for the officer to place appellant in the police cruiser and to first conduct a weapons pat-down before that placement and whether the removal of the tin was justified during the weapons pat-down.

¶{26} "Although a police officer may reasonably pat-down a person before he places him in the back of a police vehicle, the legitimacy of that procedure depends on the legitimacy of placing him in the police car in the first place." *State v. Lozada* (2001), 92 Ohio St.3d 74, 76, quoting *People v. Kinsella* (1988), 139 A.D.2d 909, 911, 527 N.Y.S.2d 899. The placement in a police car itself is permissible in order to facilitate a traffic stop even it is for the mere convenience of an officer. Id. However, this alone is not sufficient justification for a pat-down. Id.

¶{27} It is well-established that if the officer has a legitimate reason to detain a person stopped in a traffic stop, such as failure to produce a driver's license, then the officer is placing that person in the police vehicle for more than mere convenience and the officer can conduct a pat-down prior to placement in the police vehicle. Id. at 77-78, citing *State v. Evans* (1993), 67 Ohio St.3d 405, 410. "Certainly, it is reasonable that the officer, who has a legitimate reason to so detain that person, is interested in guarding against an ambush from the rear." *Evans*, 67 Ohio St.3d at 411.

¶{28} The *Lozada* Court expanded this premise and held that it is reasonable to place the driver in a patrol car and subject him to a pat-down search for weapons where placement is justified to protect the officer or the subject from a dangerous condition. Id. at 79. By way of example, the Court stated that where a hostile crowd threatens the officer or a driver during a traffic stop, the officer may be justified in placing the driver in a patrol car for the duration of the traffic stop. Id. Thus, not only people subject to detainment can be patted-down prior to placement in a police vehicle. A determination as to the reasonableness of a particular police procedure depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Id. at 78, quoting *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 878.

¶{29} In the present case, the trooper testified that after the driver of the vehicle had been arrested and placed in the cruiser, the decision had been made to have the vehicle towed. (Tr. 11). Appellant, who was a passenger in the vehicle to be towed, appeared to be impaired, had a can sticking out of his pocket, and had been travelling in a car that smelled like burnt marijuana. The trooper testified that if a passenger of a car to be towed appears to be impaired, that passenger cannot be left at the scene. (Tr. 14). The trooper intended to put appellant in the cruiser in order to transport him to the station where he could secure his own transportation and thus to ensure appellant's safety. (Tr. 16). This was not done for the officer's mere convenience.

¶{30} Consequently, it was reasonable for the officer to conduct a pat-down of appellant in order to ensure the safety of both officers before placing appellant in the

back of the cruiser.  (Tr. 14).  We conclude that counsel was justified in refusing to file a merit brief on this issue.

<u>REMOVAL OF OBJECT FROM POCKET</u>

**¶{31}** The police may search only for weapons when conducting a pat-down of the suspect.  "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *." *Terry v. State of Ohio* (1968), 392 U.S. 1, 25-26.  The protective pat-down under *Terry* is limited in scope to this protective purpose and cannot be employed by the searching officer to search for evidence of crime.  See *Adams v. Williams* (1972)*,* 407 U.S. 146.

We begin by disposing of any notion that a possible open container violation could justify a full search of appellant.  Even if the beer can in appellant's pocket was open, which is not clear from the record, an open container violation is only a minor misdemeanor.  See R.C. 4301.62.  Police officers may briefly detain, but may not conduct a custodial arrest, or a search incident to that arrest, for a minor misdemeanor offense when none of the R.C. 2935.26 exceptions apply.  See *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, ¶25.

**¶{32}** While Trooper Wolfe was acting lawfully in performing the initial pat-down of appellant for weapons, finding the can of beer provided no justification for a more in depth search.  Rather, in proceeding with the frisk, the trooper was acting under the initial justification for the search - officer safety.

**¶{33}** When Trooper Wolfe continued with the pat-down search, he felt an open metal tin in appellant's left, front pants pocket.  He admitted that he did not believe the tin was a weapon.  (Tr. 31-32).  Thus, he went beyond the scope of a *Terry* weapons frisk when he proceeded to reach into appellant's pocket and remove the tin.  However, other permissible bases may exist for the search.

**¶{34}** The U.S. Supreme Court has addressed situations in which a police officer, while conducting a lawful *Terry* frisk, feels an object "whose contour or mass makes its identity immediately apparent."  *Minnesota v. Dickerson* (1993), 508 U.S. 366.  In such situations, "there has been no invasion of the suspect's privacy beyond

that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure [is] justified by the same practical considerations that inhere in the plain-view context." Id. at 375-376. This exception to the warrant requirement allows the state to use evidence seized during a *Terry* search if the police officer, due to his experience in arresting drug offenders, feels contraband whose contour or mass makes its "incriminating character" "immediately apparent" to him. Id.

¶{35} Here, the officer stated that it was immediately apparent to him that appellant had an open mint tin in his pocket. This officer associates such tins as being containers for carrying narcotics. As the officer admitted he did not believe the tin was a weapon and a mint tin itself is not contraband, there may be a meritorious issue as to the propriety of the officer's removal of this tin from appellant's pocket. Arguing that the incriminating character of the tin was not immediately apparent would not have been frivolous. As such, it was not proper to file a no merit brief on this issue. We thus release present counsel, and we shall appoint new counsel to brief the issue of whether an officer conducting a lawful pat-down may remove an open metal tin from a person's pants pocket under the circumstances existing in this case.


Vukovich, P.J., concurs.
Waite, J., concurs.
DeGenaro, J., concurs.