[Cite as *State v. Gordon*, 2018-Ohio-2080.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 17-COA-031 |
| | : | 17-COA-032 |
| MATTIE ROSE GORDON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland Municipal Court, Case Nos. 17TRC00869, 17CRB00143

JUDGMENT:                           AFFIRMED

DATE OF JUDGMENT ENTRY:      May 24, 2018

APPEARANCES:

For Plaintiff-Appellee:

ANDREW N. BUSH
Asst. Law Director
1213 East Main St.
Ashland, OH 44805

For Defendant-Appellant:

JUSTIN M. WEATHERLY
3238 Lorain Ave.
Cleveland, OH 44113

*Delaney, J.*

{¶1} Appellant Mattie Rose Gordon appeals from the Journal Entry of the Ashland Municipal Court dated July 24, 2017. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of the suppression hearing on June 16, 2017. We note appellee's evidence at the suppression hearing included, e.g., Exhibit 3, the cruiser video, which contains audio of the trooper's conversation with appellant, video of two of the three field sobriety tests, and the arrest.

{¶3} This case arose on February 4, 2017, around 11:54 p.m., when Trooper Robert Marshall of the Ohio State Highway Patrol was on patrol in the city of Ashland and observed a vehicle he believed to be traveling over the posted speed limit of 25 M.P.H. Marshall checked his visual estimate of the vehicle's speed with a radar device and determined the vehicle was traveling 35 M.P.H.

{¶4} Marshall turned around and followed the vehicle, a white Volkswagen hatchback, which was the only car on the road. The vehicle indicated a left turn, and Marshall activated his overhead lights to initiate a traffic stop. The vehicle pulled into a gas station, but Marshall noticed a delayed reaction by the driver, identified as appellant. Marshall made contact with appellant. One male passenger was in the front seat.

{¶5} Marshall asked appellant for her operator's license and vehicle information; she seemed confused and handed him a credit card. Marshall noted she was visibly nervous and shaking. As she spoke to Marshall, he also noticed that her pupils were constricted and her eyes were red and bloodshot. Marshall shined his flashlight in her

eyes but she did not squint or blink. Based upon his training, Marshall suspected illegal or prescription drug use.

{¶6}   Appellant eventually provided Marshall with her operator's license but no further information. Marshall asked her to exit the vehicle to verify the information she provided and to ask her to perform standardized field sobriety tests (SFSTs). Appellant briefly protested and asked why she was being detained, but Marshall told her to put her purse down and to exit the vehicle, and she eventually complied.

{¶7}   As Marshall led appellant back toward the patrol car, he told her it was his policy to check individuals for weapons and asked whether she had any; appellant denied having any weapons. Marshall patted appellant down and felt an object in her vest pocket; he asked what it was, and appellant moved as if to reach for it. Marshall asked for permission to retrieve the object himself for officer safety, and appellant consented. The object was an orange pill bottle containing several different pills. Appellant said she didn't know anything about it and that the vest wasn't hers.

{¶8}   Marshall placed appellant in the back of the patrol car and Mirandized her. Marshall asked appellant again about the pill bottle and she said she didn't know anything about it; the vest wasn't hers and she had picked it up at the tow yard apparently operated by the male passenger in her vehicle. Marshall requested that another trooper and a K-9 unit come to the scene.

{¶9}   When asked if she used drugs, appellant said she took several kinds including Adderall and Suboxone. Marshall recognized Xanax pills among the pills in the orange bottle and asked how recently she had taken Xanax. Appellant first said "not too long ago" and then said she hadn't taken Xanax since April. Appellant repeatedly said

the vest was not hers and she didn't know where the pill bottle came from.  Marshall

testified the pill bottle contained a faded prescription label with appellant's name on it.

{¶10} A second trooper and a K-9 unit arrived on the scene.  The K-9 walked

around appellant's vehicle and alerted on it, but no contraband was found in the vehicle.

{¶11} Marshall asked appellant to perform a series of SFSTs to determine

whether she was impaired.  Marshall is trained in administering the standardized field

sobriety tests in compliance with N.H.T.S.A. guidelines.  Marshall observed four out of six

possible clues on the horizontal gaze nystagmus; five clues out of eight possible clues on

the walk-and-turn test; and all four potential clues on the one-leg stand test.  Marshall

concluded appellant was impaired and placed her under arrest for O.V.I.

{¶12} Between the walk-and-turn and one-leg stand tests, Marshall asked

appellant to take a seat in the patrol car again for a moment to warm up.  He asked her

to "stick [her] leg out" because he observed a burnt straw concealed in her sock.  Marshall

testified that a burnt straw is associated with drug use.

{¶13} At the Ashland County Sheriff's Office, Marshall read appellant the B.M.V.

2255 form advising her of the consequences of refusing a chemical test and appellant

signed the form.  Appellant then submitted to a urine test under supervision of a female

deputy.

{¶14} Appellant's urine sample indicated the presence of amphetamines in

excess of the legal limit.

{¶15} Appellant was charged with one count of O.V.I. pursuant to R.C.

4511.19(A)(1)(a), a misdemeanor of the first degree; one count of speeding pursuant to

R.C. 4511.21(C), a minor misdemeanor; and one count of possession of Xanax and

Valium pursuant to R.C. 2925.11(C)(2)(a), a misdemeanor of the first degree.  Appellant entered pleas of not guilty and moved to suppress evidence arising from her stop and arrest on numerous bases.  Appellee filed a memorandum in opposition and appellant filed a supplemental motion to her motion to suppress.  The matter proceeded to an evidentiary hearing and the trial court granted the motion to suppress in part and overruled it in part.  Appellant then changed her not-guilty pleas to ones of no contest was sentenced to an aggregate jail term of 120 days.

{¶16} Appellant now appeals from the trial court's Journal Entry of conviction and sentence dated July 24, 2017, incorporating the trial court's judgment entry on the motion to suppress also dated July 24, 2017.

{¶17} Appellant raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶18} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT GRANTED IN PART AND DENIED IN PART THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED FROM AN UNLAWFUL TERRY SEARCH."

## ANALYSIS

{¶19} In her sole assignment of error, appellant argues the trial court erred in overruling, in part, her motion to suppress.  We disagree.

{¶20} The trial court determined appellant essentially raised three issues with her motion to suppress: 1) whether sufficient justification existed to expand the traffic stop beyond its original purpose to ask appellant to perform SFSTs; 2) whether seizure of the pill bottle from appellant's vest, and her subsequent admissions regarding the Xanax,

were lawfully obtained; and 3) whether Marshall substantially complied with Department of Health regulations in handling the urine sample. The trial court overruled the motion to suppress on the first and third grounds, but found that the pat-down which resulted in discovery of the pill bottle (and appellant's statements regarding the pills) was not lawful. The trial court further determined, however, that the pill bottle was admissible under the doctrine of inevitable discovery: appellant's arrest was required by her poor performance on the SFSTs and the pill bottle would have been found during a search incident to her lawful arrest.[1]

{¶21} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

---

[1] Appellant's statements regarding the pill bottle were deemed inadmissible and suppressed. That finding of the trial court is not challenged in this appeal.

{¶22} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶23} In the instant case, appellant raises two arguments on appeal: 1) a fact-based challenge of the trial court's decision that Marshall would have conducted the field sobriety tests even if he had not discovered the pill bottle, and 2) a legal challenge of the trial court's application of the inevitable-discovery doctrine. The ultimate issue is whether the pill bottle is admissible.

{¶24} The first matter for our review is factual: would Marshall have conducted the SFSTs if he had not discovered the pill bottle? Marshall testified he patted appellant down for "officer safety" because it is his policy to do so before placing an individual in his patrol car. T. 29. He specified that he patted down appellant solely as a matter of policy and

not because anything about his interaction with her caused him to believe she had a weapon.

{¶25} Upon cross-examination, defense counsel suggested to Marshall that the traffic stop "transitioned into something more" because of the pill bottle. T. 48. Marshall demurred, stating "That transitioned into something else, **but there was also the impairment portion of it.**" (Emphasis added). T. 48. Later, when questioned as to why he removed appellant from the vehicle in the first place, Marshall replied that he wanted to verify her information but he also suspected she was impaired due to her excessive nervousness, constricted pupils, and bloodshot, glassy eyes. T. 54-55. Upon redirect, Marshall noted his impaired driver report further noted appellant's "delivered speech" (*sic*), slow reaction at the traffic light, and the time of night, i.e. 11:54 p.m. T. 62.

{¶26} As we observed in *State v. Brandon*, 5th Dist. No. CT2015-0039, 2016-Ohio-271, 58 N.E.3d 444, at ¶ 27, the Ohio Supreme Court has noted an officer may ask a driver to sit in his or her patrol car to facilitate a traffic stop, but the question of whether the driver may be searched for weapons before entering the patrol car is more problematic. *Id.*, citing *State v. Lozada*, 92 Ohio St.3d 74, 2001-Ohio-149, 748 N.E.2d 520. In *Lozada,* the Court found the placement of a driver in a patrol car during a routine traffic stop may be constitutionally permissible, but may not be used simply to justify a search of the driver. *Id*. The *Lozada* Court held it is unreasonable for an officer to search a driver for weapons before placing him or her in a patrol car if the sole reason for placing the driver in the patrol car during the investigation is for the convenience of the officer. *Id*. It is reasonable, however, to place a driver in a patrol car and even subject him or her to a pat-down search for weapons where placement of the person in the patrol car is

justified to protect the officer or the driver from dangerous conditions. *Id.* In *Brandon*, we concluded the pat-down search was not justified because the officers did not provide sufficient reasons to justify a reasonable belief Brandon was armed and presently dangerous. *Brandon,* 2016-Ohio-271 at ¶ 26. See also, *City of Ashland v. McClain*, 5th Dist. Ashland No. 12-COA-044, 2013-Ohio-2436, ¶ 12 [officer did not testify to any facts supporting belief suspect was armed, nor that he believed cigarette packs to be weapon, therefore pat-down not constitutionally permissible].

{¶27} In the instant case, Marshall explicitly testified he patted down appellant because of department policy and did not articulate that he had any reason to believe appellant was armed and presently dangerous. Our review of the video indicates the traffic stop was made in a well-lit gas station out of the way of traffic. Although there is no evidence in the record that Marshall placed appellant in his patrol car solely for "convenience," we also find no evidence to support a finding that Marshall believed appellant might be armed and presently dangerous. We thus agree with the trial court's initial determination that the pat-down itself, leading to discovery of pill bottle and appellant's statements relating thereto, was unlawful.

{¶28} The admissibility of the pill bottle, however, requires further analysis, as the trial court also found. Appellant's underlying argument is that Marshall would not have subjected her to further investigation, including the SFSTs, if he had not found the pill bottle. We disagree. The video is compelling evidence in support of Marshall's testimony that he had reason to suspect appellant was impaired. We have reviewed the video and agree with the following strongly-worded conclusion of the trial court:

* * * *.  Even without considering the pills and the statements about the pills, there was overwhelming evidence supporting the arrest of [appellant] for drug-impaired driving.  Trooper Marshall had already decided to do [SFSTs] before he ever found the Xanax.  [Appellant's] performance on SFSTs was abysmal.  She was obviously high, a fact that was readily apparent from watching the dash cam video.  [Appellant's] arrest was inevitable, and she would have been searched incident to arrest, and in fact she was.  The search incident to arrest would have certainly resulted in the drugs being found, had they not already been found during the unlawful patdown.  * * * *.

Judgment Entry Regarding Defendant's Motion to Suppress, 8.

{¶29} Upon our review of the video, we find the trial court's findings of fact are supported by competent, credible evidence: appellant is visibly impaired and Marshall would have been highly imprudent if he had not investigated further and required her to submit to SFSTs.

{¶30} Our resolution, therefore, of the first issue raised by appellant is that we conclude Marshall certainly would have conducted the SFSTs even if he had not discovered the pill bottle.  The video of the stop convinces us that appellant's arrest was inevitable.  Her appearance on the video is that of a significantly impaired driver.  Appellant's arguments are premised upon her insistence that this stop properly should

have remained a simple speeding traffic stop and any further consequence is purely speculative. This premise is belied by the video.

{¶31} We therefore agree with the trial court's application of the doctrine of inevitable discovery to the pill bottle. The inevitable-discovery rule states that "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Owens*, 5th Dist. Stark No. 2005 CA 00287, 2006-Ohio-2845, ¶ 16, citing *State v. Perkins*, 18 Ohio St.3d 193, 196, 480 N.E.2d 763 (1985) and *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Appellant misstates the trooper's testimony that "his decision to administer the [SFSTs] was not made until after his discovery of the pill bottle." Appellant's Brief, 19. The passage appellant cites instead indicates discovery of the pill bottle led Marshall to Mirandize appellant because he was now conducting a criminal investigation. The speed stop had become an investigation of *impaired driving*, however, immediately upon Marshall's contact with appellant. The testimony we cited above, together with our review of the video of the stop, convince us the opposite of appellant's assertion is true: Marshall would have conducted the SFSTs regardless of the discovery of the pill bottles. This is the case in which the inevitability of appellant's arrest for impaired driving is readily apparent from the video.

{¶32} We would not have to be certain of appellant's impairment to apply the inevitable-discovery doctrine because the rule does not require certitude. *State v. Ford*, 64 Ohio App.3d 105, 112, 580 N.E.2d 827 (5th Dist.1989). It only requires "that there be a very high degree of probability that the evidence in question would have been obtained

independently of the tainted source." *Id.*, citing *People v. Payton*, 45 N.Y.2d 300, 313, 408 N.Y.S.2d 395, 380 N.E.2d 224 (1978).

{¶33} We agree with the trial court that appellant's arrest was inevitable, and an ensuing search incident to arrest was inevitable, and the pill bottle is therefore admissible pursuant to the doctrine of inevitable discovery. See, *City of Ashland v. McClain*, 5th Dist. Ashland No. 12-COA-044, 2013-Ohio-2436, ¶ 15 [despite unlawful pat-down, contraband would have been discovered during search incident to lawful arrest and contraband is therefore admissible under the inevitable discovery rule]; *State v. Camp*, 5th Dist. Richland No. 14CA42, 2014-Ohio-329, 24 N.E.3d 601, ¶ 33 [officers would have arrested suspect, conducted full search incident to arrest, and inevitably would have discovered contraband in suspect's pocket]; and *State v. Woody*, 5th Dist. Stark No. 1995 CA 00219, 1996 WL 243880, *5 [officer had probable cause to arrest suspect, conduct search incident to arrest, and conduct inventory search, thus contraband would certainly have been found and inevitable discovery doctrine permits introduction of contraband into evidence].

{¶34} We have therefore independently determined, without deference to the trial court's conclusion, that the facts of the instant case meet the appropriate legal standard for application of the doctrine of inevitable discovery, and the pill bottle is admissible.

{¶35} The trial court properly sustained appellant's motion to suppress in part and overruled the motion to suppress in part.

## CONCLUSION

{¶36} The sole assignment of error is affirmed and the judgment of the Ashland Municipal Court is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.