[Cite as *State v. Willoughby*, 2021-Ohio-2611.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
|     Plaintiff-Appellee, | : | CASE NO. 20CA5 |
| VS. | : | |
| RAHEEM C. WILLOUGHBY, | : | DECISION & JUDGMENT ENTRY |
|     Defendant-Appellant. | : | |

_____

APPEARANCES:

Todd W. Barstow, Columbus, Ohio for appellant.[1]

Judy Wolford, Pickaway County Prosecuting Attorney, and Jayme H. Fountain, Assistant Prosecuting Attorney, Circleville, Ohio, for appellee.

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-22-21
ABELE, J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. Raheem C. Willoughby, defendant below and appellant herein, pleaded no contest to one count of aggravated trafficking in drugs and one count of aggravated possession of drugs.

{¶2} Appellant assigns two errors for review:

---

[1] Different counsel represented appellant during the trial

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
APPELLANT BY OVERRULING HIS MOTION TO
SUPPRESS EVIDENCE, IN VIOLATION OF THE
FOURTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION AND ARTICLE ONE
SECTION TEN OF THE OHIO CONSTITUTION. (T. 7-
24; R. DECISION AND ENTRY 8/2/19)."

SECOND ASSIGNMENT OF ERROR:

"APPELLANT'S PLEA OF NO CONTEST WAS NOT MADE
KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY IN
VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW
PURSUANT TO THE FIFTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION
AND ARTICLE ONE SECTION SIXTEEN OF THE OHIO
CONSTITUTION. (R. ENTRY OF NO CONTEST PLEA
AND SENTENCE, 6/29/20; T. 28-42)."

{¶3} On June 7, 2019, a Pickaway County Grand Jury returned an indictment that charged appellant with (1) one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), and (2) one count of aggravated possession of drugs in violation of R.C. 2925.11(A). Both charges are second-degree felonies and included forfeiture specifications.

{¶4} Subsequently, appellant filed a motion to suppress evidence. At the suppression hearing, Pickaway County Sheriff's Deputy Corporal Stephen Harger testified that, during the daylight hours of May 4, 2019, he observed a vehicle make an improper lane change, fail to signal, and fail to display a

court proceedings.

license plate.  Harger thereupon initiated a traffic stop: "I made contact with the driver, a female.  Both she and the passenger, appellant, were extremely nervous, couldn't answer very basic questions that I ask everybody that I stop."  Harger further described the behavior of the car's occupants: "I asked them very basic questions, where were you coming from.  They wouldn't look me in the eye, they were extremely nervous to where both the driver and the passenger were physically shaking."  Harger stated that, after the back seat passenger "was found to have a warrant," Harger "secured the passenger in my cruiser."  Harger then removed the driver as she "seemed possibly being under the influence the way she was acting."  Harger also requested the assistance of a female deputy and, during his interaction with the driver, Harger "advised [the driver] that I had deployed my K-9 for a free air narcotic search around the vehicle."

{¶5}  After Corporal Harger removed the driver, he also removed appellant and "explained what was going on, what I was doing and that I would be performing a simple pat down for weapons."  When asked at the hearing whether he would ever "run a K-9 around the car with passengers in the car," Harger testified, "[n]o * * * Because safety of the unknown, what's inside that vehicle as far as weapons, safety for myself, my

partner and everybody that could be around.  Like I said, we were right there on 23, we don't know what's inside that vehicle.  It's standard procedure for any type of stop, including my K-9."  When asked why he advised appellant that he intended to pat him down, Harger stated, "Just because of all of the areas that I have been trained in.  It was, like I said, there was inconsistencies of the stories, and just for my safety."

**{¶6}**  When Corporal Harger patted down appellant's outer garments and "felt a hard bulge in the groin area,"  Harger informed appellant that he found contraband and advised appellant he was under arrest.  After appellant told Harger that he "had something in his pants," Harger "put gloves on and I retrieved it out of his pants."  Harger identified the contraband as methamphetamine.  Appellant also informed Harger that "he had suboxone in his pants," and Harger retrieved the suboxone.  At that time, Harger deployed the canine, and "[i]mmediately, on my cursory search, the dog alerted on the passenger's side of the vehicle where Mr. Willoughby was sitting."

**{¶7}**  During cross-examination, Corporal Harger acknowledged that in the criminal complaint he only noted that the driver appeared to be extremely nervous and that he did not arrest the

driver.  The complaint further stated that, after Harger removed the contraband, "Mr. Willoughby was secured in the back of [Deputy Canos's] cruiser.  I deployed my K-9 partner Joris, he indicated on the drivers side door and the passenger side door of the vehicle.  Upon search of the vehicle, Deputy Cano located some paraphernalia and a small amount of marijuana inside the vehicle on the passenger side.  Mr. Griffith [back seat passenger] was transported to the jail on his warrant and Mr. Willoughby was transported to the jail and charged with possession of drugs and trafficking in drugs."

**{¶8}**  After the trial court overruled appellant's motion to suppress evidence, appellant pleaded no contest to both counts. The court accepted appellant's pleas and: (1) imposed a four-year mandatory prison sentence for Count One; (2) ordered Count One be subject to an additional two years of imprisonment pursuant to the Reagan Tokes Law, (3) merged counts one and two for purposes of sentencing, and (4) ordered a mandatory three-year post-release control term.  This appeal followed.

I.

**{¶9}**  In his first assignment of error, appellant asserts that the trial court's decision to overrule his motion to suppress evidence violates his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Appellant argues that the trial court erroneously applied the inevitable discovery rule when the court denied appellant's motion to suppress. Appellant further contends that the prosecution did not adduce evidence to establish that (1) the canine could detect contraband no longer in a vehicle, and (2) the evidence did not establish what particular drug sparked the canine's alert on the car, although the post-alert vehicle search found marijuana.

{¶10} In general, appellate review of a motion to suppress evidence presents a mixed question of law and fact. *State v. Hawkins,* 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. Thus, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. *Id.*; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982); *State v. Debrossard,* 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 9. The reviewing court then must independently determine, without deference to the trial court,

whether the trial court properly applied the substantive law to the case's facts. *See Roberts* at ¶ 100; *Burnside*, *supra,* at ¶ 8; *State v. Hansard*, 4th Dist. Gallia No. 19CA11, 2020-Ohio-5528, ¶ 15.

### A.   Pat-Down Search for Weapons

**{¶11}** The Fourth Amendment to the United States Constitution and Article I, Section Fourteen of the Ohio Constitution, protect individuals from unreasonable searches and seizures. *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15.   The exclusionary rule protects this constitutional guarantee and mandates the exclusion of evidence obtained from an unreasonable search and seizure. *Id.*

**{¶12}** The case sub judice involves an automobile investigatory stop.  To make an investigatory stop, an officer must have a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation. *See State v. Petty,* 2019-Ohio-4241, 134 N.E.3d 222, ¶ 12 (4th Dist.); *State v. Shrewsbury,* 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 15, citing *United States v. Williams,* 6th Cir. No. 12-5844, 2013 WL 1831773 (May 2, 2013). In the case at bar, Corporal Harger's observation of traffic violations justified the initial investigatory stop. *See, e.g., Hansard,* ¶ 17; *State v. Brown*, 4th Dist. Ross No. 18CA3644,

2019-Ohio-1112, ¶ 15; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus ("A traffic stop is constitutionally valid when a law enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving.")

**{¶13}** Further, after a stop an officer has the authority to order the vehicle's occupants to exit the vehicle.  *See State v. Fowler*, 4th Dist. Ross No. 17CA3599, 2018-Ohio-241, ¶ 17, quoting *State v. Alexander-Lindsey*, 2016-Ohio-3033, 65 N.E.3d 129, ¶ 14 (4th Dist.)(" 'Officers may order a driver and a passenger to exit a vehicle, even absent any additional suspicion of a criminal violation' ").  Therefore, in the case at bar, the officer properly stopped the vehicle and directed appellant to exit the vehicle.  *Brown* at ¶ 16; *Hansard* at ¶ 17.

**{¶14}** An officer may also ask a driver to sit in the patrol car to facilitate a traffic stop, "but the question of whether the driver may be searched for weapons before entering the patrol car is more problematic."  *State v. Gordon*, 5th Dist. Ashland No. 17-COA-031, 17-COA-032, 2018-Ohio-2080, ¶ 26.  The Supreme Court of Ohio has held that "[d]uring a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing

the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." *State v. Lozada,* 92 Ohio St.3d 74, 2001-Ohio-149, 748 N.E.2d 520, paragraph one of the syllabus. Conversely, "[d]uring a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer." *Lozada*, paragraph two of the syllabus. Otherwise, "every single traffic stop could be transformed, as a matter of routine, into a *Terry* stop," and we cannot allow the Fourth Amendment protection against seizures to "be whittled away by police regulations." *Lozada* at 77, citing *O'Hara v. State* (Tex.Crim.App.2000), 27 S.W.3d 548, 553, quoting *Sikes v. State*, (Tex.App.1998), 981 S.W.2d 490, 494.

{¶15} Thus, because an officer's authority to conduct a pat-down search for weapons does not flow automatically from a lawful stop, a separate inquiry is required. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Consequently, neither an order to exit the vehicle, nor the act of placing a motorist in a police cruiser, automatically entitles an officer

to conduct a pat-down for weapons.  *State v. Dozier*, 187 Ohio App.3d 804, 2010-Ohio-2918, 933 NE.2d 1160, ¶ 8, citing *State v. Evans*, 67 Ohio St.3d 405, 407, 618 N.E.2d 162 (1993).  Instead, to determine whether a person may be subjected to a pat-down search for weapons, "we must consider whether, based on the totality of the circumstances, the officer had a reasonable, objective basis to believe that the motorist was armed and dangerous."  *Evans* at 409; *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991).  The officer "need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger."  *Andrews* at 89.

{¶16} The "right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed."  *Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990).  However, *Williams* does not appear at first glance to support a *Terry* frisk in the case at bar.  At the time Corporal Harger removed appellant from the vehicle, Harger knew that the driver could possibly be under the influence, the back seat passenger had an outstanding warrant, appellant had committed a seat-belt violation, and the car's occupants appeared to be "extremely nervous."

{¶17} The question of whether Harger had a reasonable, objective basis to believe that appellant was armed and dangerous, we note that in *State v. Brandon*, 2016-Ohio-271, 58 N.E.3d 444 (5th Dist.), officers made contact with Brandon while he sat in a stationary vehicle, asked for identification, then asked him to go to the police station to speak with them. Brandon agreed, but preferred to drive himself. Officers then patted Brandon down for weapons, "for officer safety." *Id.* at ¶ 19, 25. The Fifth District observed that officers did not arrest Brandon, had no legitimate reason to place Brandon in an unmarked car and drive him to the police station, observed no weapons in the vehicle, and stood close to Brandon while he answered questions during the daytime on a public street. Thus, because officers did not express a reasonable, articulable suspicion that Brandon was armed and dangerous, the court concluded that the *Terry* pat-down search was improper. *Id.* at 25-27.

{¶18} In *State v. Gordon*, 5th Dist. 17-COA-031, 17-COA-032, 2018-Ohio-2080, an officer performed the pat-down because of department policy. The pat-down led to the discovery of a pill bottle. However, because the officer did not articulate any reason to believe Gordon to be armed and dangerous, the court determined the pat-down to be improper. *Id.* at 27.

{¶19} In the case sub judice, the trial court concluded that Corporal Harger's pat-down search "seem to be his own standard operating procedure when he removes anyone from a motor vehicle." Harger did not articulate facts to demonstrate that he had a reason to believe that appellant may have been armed and dangerous. At the suppression hearing, Harger acknowledged that, although he stated in the complaint that the driver acted nervously, at the hearing Harger testified that all occupants behaved that way. Harger also testified that he generally removes people from vehicles before he walks his canine around a car because of "safety of the unknown, what's inside that vehicle as far as weapons, safety for myself, my partner and everybody that could be around. Like I said, we were right there on 23, we don't know what's inside that vehicle. It's standard procedure for any type of stop, including my K-9." As for appellant's pat-down, Harger stated "just because of all of the areas that I have been trained in. It was, like I said, there was inconsistencies of the stories, and just for my safety."

{¶20} While we readily agree that officer safety is of paramount importance, under the lens of existing law that *Terry* demands, we believe that the totality of the circumstances in the case at bar did not rise to the reasonable and objective

basis to believe that the occupants were armed and dangerous. We, however, are also fully aware of the alarming trend of increasing danger and tragic circumstances that law enforcement officers now encounter on a daily basis while conducting routine traffic stops. Certainly we can foresee a time when an officer's safety may permit a pat-down search for weapons even during routine traffic stops even without the need for specific facts to indicate that a detainee may be armed and dangerous. Today, however, the controlling authorities have not yet adopted that view.

{¶21} Consequently, we agree with the trial court's conclusion that the officer's pat-down search did not comply with the *Terry* requirements. However, to determine whether the evidence in the case at bar must be suppressed, we turn to a discussion of the inevitable-discovery doctrine.

### B.   Inevitable Discovery

{¶22} Although the pat-down search for weapons in the case sub judice may not have complied with *Terry*, the trial court nevertheless determined that the inevitable discovery exception permits the inclusion of the evidence obtained during the pat-down search. Appellant, however, contends that (1) no evidence exists to show that the canine could detect methamphetamine in

appellant's pants after he exited the vehicle, and (2) no

evidence exists regarding what particular drug, if any, the

canine alerted to on the car.  Appellant observes that the

vehicle search found marijuana, but the officer discovered

methamphetamine and suboxone during appellant's pat-down search.

{¶23} The Supreme Court of Ohio has held that "illegally

obtained evidence is properly admitted in a trial court

proceeding once it is established that the evidence would have

been ultimately or inevitably discovered during the course of a

lawful investigation."  *State v. Perkins*, 18 Ohio St.3d 193,

196, 480 N.E.2d 763 (1985), adopting the rule set forth in *Nix

v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)

(holding that under the inevitable-discovery doctrine, if the

evidence in question "ultimately or inevitably would have been

discovered by lawful means * * * then * * * the evidence should

be received").  Under the inevitable-discovery doctrine, the

prosecution has the burden to demonstrate, within a reasonable

probability, that law enforcement would have discovered the

evidence in question apart from the unlawful conduct.  *Perkins*,

*supra*.

{¶24} For evidence to be admitted under the "inevitable

discovery exception," the state must demonstrate (1) a

reasonable probability that evidence would have been discovered

by lawful means but for the police misconduct, (2) police possessed the leads to make the discovery inevitable at the time of the misconduct, and (3) police actively pursued an alternate line of investigation prior to the misconduct.  *United States v. Buchanan*, 904 F.2d 349, 356 (6th Cir.1990), quoting *United States v. Webb,* 796 F.2d 60 (6th Cir.1986); *State v. Taylor*, 138 Ohio App.3d 139, 151, 740 N.E.2d 704 (2000), citing *State v. Wilson*, 97 Ohio App.3d 333, 335, 646 N.E.2d 863 (1994); *State v. Coston*, 168 Ohio App.3d 278, 2006-Ohio-3961, 859 N.E.2d 990, ¶ 25 (10th Dist.).  Thus, we must examine whether a reasonable probability exists that law enforcement would have discovered appellant's drugs apart from the improper pat-down search.

**{¶25}** It is well-settled that the use of trained drug-detection dogs during lawful traffic stops will not trigger Fourth Amendment protection.  *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).  A drug-detection dog may sniff a vehicle's exterior during a lawful traffic stop even in the absence of a reasonable suspicion of drug-related activity.  *Id.* at 409, 125 S.Ct. 834.  However, law enforcement may not unreasonably extend a traffic stop to conduct a dog sniff, absent a reasonable suspicion of drug activity.  *Rodriguez v. United States,* 575 U.S. 348, 357-358,

135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).  The question "is not whether the dog sniff occurs before or after the officer issues a ticket, * * * but whether conducting the sniff 'prolongs'-- i.e., adds time to - - 'the stop.'"  *Rodriguez*, *supra*, at 357, citation omitted.  In the present case Corporal Harger had the canine on the scene from the inception of the vehicle stop and available to sniff the vehicle's exterior.  In fact, as the trial court points out, Harger actually advised the driver that Harger intended to deploy his canine for a vehicle sniff before he gave appellant a pat-down.  Furthermore, the canine sniff did not unreasonably extend the duration of the stop.

**{¶26}** It is also well-settled that, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer then has probable cause to search the vehicle for contraband.  *Florida v. Harris*, 568 U.S. 237, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013); *United States v. Reed*, 141 F.3d 644 (6th Cir.1998) (quoting *United States v. Berry*, 90 F.3d 148, 153 (6th Cir.1996), cert. denied 519 U.S. 999, 117 S.Ct. 497, 136 L.Ed.2d 389 (1996); *accord*, *United States v. Hill*, 195 F.3d 258, 273 (6th Cir.1999); *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir.1994).  However, probable cause to search a vehicle's occupant has a more demanding standard.  In *United*

*States v. Di Re*, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948), the United States Supreme Court held that probable cause to search a car does not mean that "a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Id.* at 587, 68 S.Ct. 222. Similarly, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra* v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

{¶27} In deciding the suppression issue in the case sub judice, the trial court cited *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, and *State v. Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545. In *State v. Jones*, *supra,* this court upheld the warrantless search of a vehicle's passenger when a narcotics dog alerted in the area of the vehicle where the defendant was seated. *Id.* at ¶ 43. We added, however, that, although "the dog's positive reaction to the vehicle while Jones was seated in it was clearly relevant, this factor alone is insufficient to constitute probable cause to search Jones' person." *Id.* Also, in *Jones* (1) the officer observed Jones make furtive movements in the backseat, (2) the

officer knew Jones had a history of drug possession, (3) the canine alerted to drugs while Jones was seated in the car, and (4) Jones attempted to hinder the pat-down search.  These factors do not appear to be present in the case at bar, however.

{¶28} In *State v. Kelley*, *supra,* this court found it unnecessary to determine whether a dog's alert, by itself, could establish probable cause to search a person seated in a vehicle. *Id.* at ¶ 24.  We noted, however, that "we have previously indicated that although a dog's alert on a vehicle with a defendant seated in it may be a relevant factor in the probable cause analysis, 'this factor alone is insufficient to constitute probable cause to search [the] person.' "  *Id.,* citing *Jones* at ¶ 43.  Rather than focus on one factor, such as the dog alert, we concluded that the officer possessed probable cause to search Kelley under the totality of the circumstances.  *Id.*  We also observed that in *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000), the Supreme Court of Ohio held that "[t]he smell of marijuana, alone, by a person qualified to recognize this odor, is sufficient to establish probable cause to conduct a search." *Moore*, syllabus.  Thus, in *Kelley* we observed that "[o]ne could easily infer that a drug dog's alert on a vehicle is at least similar, and maybe more precise, to a trained officer's smell of

marijuana." *Kelley*, *supra,* footnote 3. In *Kelley*, the dog alerted on the vehicle's passenger side while Kelley sat in the vehicle.

{¶29} In the case at bar, Corporal Harger observed a vehicle make an illegal lane change, fail to signal, and fail to properly display a license plate. The officer testified that all occupants were "extremely nervous," the driver appeared to be shaking and under the influence, and a back-seat passenger had an outstanding warrant. "While [some] degree of nervousness during interactions with police officers is not uncommon, * * * nervousness can be a factor to weigh in determining reasonable suspicion." *State v. Simmons*, 2013-Ohio-5088, 5 N.E.3d 670, ¶ 17 (12th Dist.) After the officer advised the occupants of his intention to conduct a canine vehicle sniff, he conducted a pat-down search for weapons that resulted in the discovery of appellant's drugs, albeit immediately prior to the canine vehicle search. Shortly thereafter, the canine alerted to the presence of drugs on the side of the car where appellant had been sitting. Thus, because the canine did alert to the presence of drugs, the officer's pat-down of appellant would have been justified after the canine alert. Taken together, we agree with the trial court's conclusion that the totality of the

circumstances present in the case sub judice supports the application of the inevitable-discovery doctrine.

{¶30} Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.

## II.

{¶31} In his second assignment of error, appellant asserts that he did not enter a knowingly, voluntary, and intelligent no contest plea.  In particular, appellant argues, citing R.C. 2937.07, that the trial court's plea colloquy failed to advise him of the effects of his no contest plea and that his plea did not constitute an admission of guilt.

{¶32} In deciding whether to accept a plea, a court must determine whether a defendant is making the plea knowingly, intelligently, and voluntarily.  *State v. McDaniel*, 4th Dist. Vinton No. 09CA677, 2010-Ohio-5215, ¶ 8.  " 'In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.' " (Emphasis sic.)  *Id.*, quoting *State v. Eckler*, 4th Dist. Adams No. 09CA878, 2009-Ohio-7064, ¶ 48; *State v. Hearn,* 4t Dist. Washington No. XXX, 2021-Ohio-594, ¶ 18; *State*

*v. Barner*, 4th Dist. Meigs No. 10CA9, 2012-Ohio-4584, ¶ 8.

**{¶33}** "Before accepting a guilty plea, the trial court should engage in a dialogue with the defendant as described in Crim.R. 11(C)." *McDaniel* at ¶ 8, citing *State v. Morrison*, 4th Dist. No. 07CA854, 2008-Ohio-4913, ¶ 9. Crim.R. 11(C)(2) provides:

> In felony cases the court may refuse to accept a plea
> of guilty or a plea of no contest, and shall not
> accept a plea of guilty or no contest without first
> addressing the defendant personally and doing all of
> the following:
> (a) Determining that the defendant is making the plea
> voluntarily, with understanding of the nature of the
> charges and of the maximum penalty involved and if
> applicable, that the defendant is not eligible for
> probation or for the imposition of community control
> sanctions at the sentencing hearing.
> * * *

**{¶34}** Substantial compliance with Crim.R. 11(C)(2)(a) is sufficient for a valid plea concerning nonconstitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14. " 'Substantial compliance means that, under the totality of the circumstances, appellant subjectively understood the implications of his plea and the rights he waived.' " *McDaniel* at ¶ 13, quoting *State v. Vinson*, 10th Dist. No. 08AP-903, 2009-Ohio-3240, ¶ 6.  As the Supreme Court of Ohio explained in *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748,

893 N.E.2d 462, ¶ 32:

> When the trial judge does not substantially comply
> with Crim.R. 11 in regard to a nonconstitutional
> right, reviewing courts must determine whether the
> trial court partially complied or failed to comply
> with the rule. If the trial judge partially complied,
> e.g., by mentioning mandatory postrelease control
> without explaining it, the plea may be vacated only if
> the defendant demonstrates a prejudicial effect. The
> test for prejudice is "whether the plea would have
> otherwise been made." If the trial judge completely
> failed to comply with the rule, e.g., by not informing
> the defendant of a mandatory period of postrelease
> control, the plea must be vacated. "A complete failure
> to comply with the rule does not implicate an analysis
> of prejudice." (Emphasis sic.) (Citations omitted.)

**{¶35}** "Crim.R. 11(C)(2)(b) requires the trial court to inform the defendant of the effect of his guilty or no-contest plea and to determine whether he understands that effect." *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 12; *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 10-12. "To satisfy the effect-of-plea requirement under Crim.R. 11(C)(2)(b), a trial court must inform the defendant, either orally or in writing of the appropriate language of Crim.R. 11(B)." *Jones* at ¶ 25, 51. Further, the trial court must also inform the defendant that upon acceptance of his pleas, it "may proceed with judgment and sentence." Crim.R. 11(C)(2)(b).

{¶36} At the June 29, 2020 change of plea hearing, appellee indicated "[t]he state has agreed to offer Mr. Willoughby a no contest plea to both counts in this particular matter.  That way it preserves his appeal rights for the suppression motion, understanding the state is then also still recommending a four-year mandatory prison term."  Appellant's counsel stated that he read the change of plea form to appellant, "and I think that I have explained it to his satisfaction.  He has signed the document in both places, both the change of plea form and the waiver of jury trial rights, and the acknowledgment thereof." The trial court addressed appellant and inquired about his education level, to which appellant replied, "I'm actually college educated."  After the court discussed the charges and maximum sentence, the court stated, "[h]ow this operates, Mr. Willoughby, is if you are pleading no contest, there is a stipulation of finding of guilt[.]"  The court also explained that appellant would be waiving his right to a jury trial and stated:

> [I]f you plead no contest to these charges here this morning with a stipulation of guilt, you are giving up your right to go further with this jury trial and all the other rights I just got through explaining to you.
>
> By pleading no contest with a stipulation of guilt, it will preserve your right to appeal the decision previously made in this court with respect to your

motion to suppress.  Do you understand that?
Appellant replied, "Yes. I understand that."  The trial court then reviewed the agreed sentence and asked appellant if he understood, to which he replied, "Yes, I understand it completely."  After hearing an explanation about post-release control, appellant entered his plea and stated, "I intend to appeal the suppression motion that falls within the thirty days."  Appellant also requested appellate representation.

**{¶37}** After our review in the case at bar, we believe that the trial court substantially complied with the applicable rules.  Further, appellant acknowledged that he understood the implications of his plea and the various rights that he would waive through a no contest plea.  Appellant, represented by counsel at the plea hearing, did not assert his innocence and we find nothing to suggest any confusion or lack of understanding regarding the effect of his plea.  Moreover, appellant did not argue that he would not have entered his no contest plea but for the trial court's alleged error.  *See State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474.  Moreover, even if the trial court was arguably required to recite the facts and circumstances that surrounded the no contest pleas, the omission at most constitutes harmless error.  Therefore, because

appellant failed to establish prejudice, we conclude that appellant knowingly, voluntarily, and intelligently entered his no contest pleas.

{¶38} Accordingly, based upon the foregoing reasons we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60 day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.